# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| TRAVIS STORY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 4:17-CV-12 |
| | ) | |
| FIAT CHRYSLER AUTOMOTIVE, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Compel Answers to Discovery [DE 17], filed by Plaintiff on March 21, 2018. On April 3, 2018, Defendant filed a response, and on April 20, 2018, Plaintiff filed a reply. Plaintiff requests that the Court compel complete responses to interrogatories and requests for production of documents.

Pursuant to Federal Rule of Civil Procedure 26, the scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or provides evasive or incomplete responses. *See* Fed. R. Civ. P. 37(a). The party objecting to the discovery request bears the burden of showing why the request is improper. *See McGrath v. Everest Nat'l Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). The Court has broad discretion when determining matters related to discovery. *Thermal Design, Inc. v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Eng'rs, Inc.*, 755

F.3d 832, 837 (7th Cir. 2014); *Rennie v. Dalton*, 3 F.3d 1100, 1110 (7th Cir. 1993).

Plaintiff's Complaint includes claims of race discrimination and retaliation by Defendant, his employer. He now moves to compel Defendant to fully respond to Plaintiff's interrogatories and requests for production of documents. Plaintiff does not specifically identify the interrogatories to which he is seeking additional responses or the documents he is seeking to compel, and the Court will not search through the scores of pages attached as exhibits to the Motion to determine which requests or documents are still outstanding and why. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 898 (7th Cir. 2018) ("It has become axiomatic in this Circuit to remind parties . . .that '[j]udges are not like pigs, hunting for truffles buried in' the record.") (quoting *Albrechtsen v. Bd. of Regents of Univ. of Wisc. Sys.*, 309 F.3d 433, 436 (7th Cir. 2002)). In his Motion, Plaintiff does refer to the personnel files and emails of two employees and provides legal arguments as to why personnel files are discoverable, so the Court will address that request.

Plaintiff asserts that the "employment files" of two of his managers are relevant in this case because they were decision-makers and witnesses to the events alleged in the Complaint. Defendant points out that, to the extent Plaintiff is seeking to compel the personnel file of Chris DeWeese, that file was not requested as part of the written discovery requests. Plaintiff concedes this, and therefore the Court will not order it provided in this case. Plaintiff did request the file of Joseph Fellow, and Defendant objected on the grounds that the request was over-broad and sought information not relevant to Plaintiff's claims.

As courts have recognized, provision of personnel folders "may infringe on the privacy interests of non-parties. While it is true that no privilege exists to protect personnel files, courts recognize that such information is sensitive, and that they should weigh the value of the information

2

sought against the burden of providing it." *Doyle v. City of Chicago*, 943 F. Supp. 2d 815, 828 (N.D. Ill. 2013). Accordingly, the Court "ha[s] broad discretion to limit a request for the discovery of personnel files, in order to prevent the dissemination of personal or confidential information about employees." *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1010 (7th Cir. 2009) (citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir.2003)). The Seventh Circuit Court of Appeals has directed the district court considering whether a personnel file should be produced to "consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truth-seeking function' in the particular case before the court." *Brunker*, 583 F.3d at 1010 (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)); *see also, e.g., Baker v. Town of Middlebury*, 753 N.E.2d 67, 72 (Ind. Ct. App. 2001) (noting the important "public policy protecting the privacy rights of individuals with respect to sensitive personnel matters" in Indiana).

Defendant explains that, although other people discussed disciplining Plaintiff in April 2016 after a performance issue, Fellow did not make a decision to discipline Plaintiff. Defendant provided documents to Plaintiff showing that Fellow did not make the decision and, although a copy of a written warning was provided to Fellow, he never delivered the warning to Plaintiff, nor did Plaintiff receive any discipline for the April 2016 performance issue. Accordingly, Defendant argues, information in Fellow's personnel file is not relevant to Plaintiff's claims, and its provision is particularly inappropriate because of all of the personal information in the employment file, including things like medical records, personnel records, and wages. Plaintiff argues that he should receive a copy the personnel folder, perhaps with some of the medical and other personal

3

information excluded, so that he can determine if there is any relevant information in the file. His only argument about what relevant information might be in the file is reference to the fact that managers "are witnesses and decision makers."

Although he refers to the fact that personnel files of similarly-situated employees can be discoverable, Plaintiff has requested the files of supervisors, not similarly-situated employees, and Defendant has already provided information to Plaintiff regarding the discipline decisions in April 2016. It is not appropriate to allow Plaintiff access to the personal and private information of Fellow just in case there might be additional relevant information in the personnel file that Defendant has not already provided, or for Defendant to bear the burden of redacting the entire file, especially given the information Plaintiff already has received about Fellow's role and in light of the privacy concerns of a non-party. *Brunker*, 583 F.3d at 1010 (concluding that "the magistrate judge properly found irrelevant the discovery requests regarding discrimination from supervisors who were not involved with Brunker's termination"). Plaintiff can depose Fellow to ask about his role in managing Plaintiff or ask for other documentation about his interaction with Plaintiff, information that is unlikely to be included in the personnel file to begin with. In these circumstances, the likely value of the information in the file is far outweighed by the burden of producing it.

In addition to the personnel files, Plaintiff requested all documents and emails authored and/or received by Fellows and DeWeese pertaining to or about Plaintiff for a time period of almost 18 months. Defendant argues that the request is expansive and not proportional to the needs of the case, and that the request as written would involve a huge number of records completely unrelated to Plaintiff's claims. Defendant requested that Plaintiff provide search terms to limit the broad request to emails and documents likely to include information relevant to the claims in the case.

4

Plaintiff agrees that Defendant can use search terms, but only to find all of the documents he requests, and argues that it is up to Plaintiff to determine which of the many apparently irrelevant documents and emails might be relevant to his claims. He argues that limiting the search to 18 months is sufficiently limiting the scope of the request, no matter how many documents result.

Although the scope of discovery is broad, it is not unlimited. Broad discovery rules "were never intended to be an excursion ticket to an unlimited exploration of every conceivable matter that captures an attorney's interest . . . [and] '[d]iscovery of matter not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Rule 26(b)(1).'" *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 721 (N.D. Ill. 2014) (quoting *Oppenheimer Fund*, 437 U.S. at 352). The request for every email and document that mentions Plaintiff sent, received, or authored by either of two managers is an overly-broad request, not reasonably calculated to lead to the discovery of admissible evidence. The Court notes that keyword searches are frequently used as a tool to narrow the documents that must be reviewed during document production, limiting the burdens of time and cost when large volumes of electronic documents are involved. *See, e.g., Makowski vs. SmithAmundsen LLC*, No. 08 C 6912, 2012 WL 1634832, at *1 (N.D. Ill. May 9, 2012) ("The purpose of such a search is to narrow the universe of ESI that a party must review when attempting to locate emails and other materials that are responsive to document requests. Such a process is necessary because it typically is not feasible or cost effective for a party to read each and every email in a computer system to try to find the ones that are responsive to a discovery request."). The Court encourages counsel for Plaintiff to consider that key word searches or technology assisted review are appropriate and useful ways to narrow the volume of an otherwise overly-broad request, such as this one, and encourages cooperation with opposing counsel to craft an appropriate search.

*See, e.g., City of Rockford v. Mallinckrodt ARD Inc.*, 326 F.R.D. 489 (N.D. Ill. 2018) (outlining an agreed search procedure and emphasizing its reasonableness and importance).

At the end of his argument regarding the personnel files, Plaintiff mentions that Defendant also refused to answer interrogatories, giving as an example Plaintiff's question about whether Defendant has an affirmative action plan. Plaintiff did not include Defendant's reasons for not responding to the interrogatory or make any argument as to why the request is relevant to his claims. To the extent that Plaintiff is seeking to compel a response to this interrogatory, or any other interrogatory, he may file a properly-supported motion specifically identifying and addressing each interrogatory to which he is seeking to compel a response, with enough information for Defendant to respond to the Motion and for the Court to make a determination regarding its relevancy to the case.

For the foregoing reasons, the Court hereby **DENIES** the Motion to Compel Answers to Discovery [DE 17]. As Rule 37 provides, because "the motion is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(A)(5)(B). Accordingly, the Court **ORDERS** Defendant to **FILE**, on or before **November 9, 2018**, an itemization of its costs and fees, including attorney's fees, incurred in defending against the Motion to Compel along with argument as to why those expenses are reasonable in this situation. The Court **ORDERS** Plaintiff to file a response by **November 23, 2018**, and Defendant to file a reply, if any, by **November 30, 2018**.

Counsel for Plaintiff has also filed a Motion for Leave to Withdraw [DE 35] and a Notice of Attorney's Lien [DE 34], addressing fees he incurred in preparing the instant Motion to Compel.

Because the question of fees and costs related to the instant Motion is still pending, and since Attorney Bullock may be responsible for the payment of some or all of those expenses, if awarded, the Court hereby **TAKES UNDER ADVISEMENT** the Motion for Leave to Withdraw [DE 35] until the question of costs and fees related to the Motion is resolved.

SO ORDERED this 26th day of October, 2018.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record