UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| TRAVIS STORY, <br><br> Plaintiff, <br><br> v. <br><br> FIAT CHRYSLER AUTOMOTIVE, <br><br> Defendant. | CAUSE NO.: 4:17-CV-12-TLS |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 55]. For the reasons set forth below, the Court GRANTS the Defendant's motion.

**PROCEDURAL BACKGROUND**

The Plaintiff Travis Story filed a Complaint [ECF No. 1] against the Defendant Fiat Chrysler Automotive, alleging claims of race discrimination under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e (Count I), hostile work environment under Title VII (Count II), retaliation in violation of Title VII (Count III), race discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981 (Count IV), retaliation under § 1981 (Count V), and intentional infliction of mental and emotional distress under Indiana law (Count VI). The instant Motion for Summary Judgment is fully briefed and ripe for ruling.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2)

presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citation omitted). In response, the non-movant "must make a sufficient showing on every element of his case on which he bears the burden of proof; if he fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## MATERIAL FACTS

**A.  The Plaintiff's Employment**

The Plaintiff submitted an Application for Employment with the Defendant in 2013, and the Defendant hired the Plaintiff as a production operator in the Production department, which entailed washing and wrapping parts. Def. Ex. A, 27:23–24, 45:3–46:11, ECF No. 56-1; Def. Ex. C, ECF No. 56-3; Pl. Ex. 1, ¶¶ 3–4, ECF No. 63-1.

**B.  Supervisor Chris Deweese**

Chris Deweese became the Plaintiff's supervisor in 2015. Pl. Ex. 1, ¶ 5. One day, Deweese pulled on the back of the Plaintiff's shirt sleeve; the Plaintiff did not hear him say

anything. Def. Ex. A, 21:1–18. The Plaintiff testified that he did not remember when this happened, *id.* at 27:1–7, but he states in his affidavit offered in response to summary judgment that this occurred in September 2015, Pl. Ex. 1, ¶ 7.

The Plaintiff testified that on another occasion, Deweese came up to him and said, "Hey, Travis man, you got some dirt on your shoulder." Def. Ex. A, 17:10–12. Deweese then slapped the Plaintiff hard on the arm three or four times. *Id*. at 17:12–16, 22:23–23:3, 62:10–13. The Plaintiff testified in his April 1, 2019 deposition that this conduct occurred "a few years ago." *Id.* at 23:4–6. In his affidavit, the Plaintiff states that this event occurred in 2016. Pl. Ex. 1, ¶ 11.

Sometime after he became the Plaintiff's supervisor, Deweese would ask the Plaintiff to look at African American women and would ask him "very personal questions." *Id.* at ¶ 8. Deweese asked the Plaintiff if he had a girlfriend and accused him of flirting when he spoke to female co-workers. *Id.* In 2016, Deweese pushed the Plaintiff, told him to look at a woman, and said, "I bet someone is taking care of that," which made the Plaintiff very uncomfortable. *Id.* at ¶ 12. In 2016, Deweese asked the Plaintiff if he had a girlfriend and told the Plaintiff that he knew the Plaintiff was doing something with his "johnson," referring to the Plaintiff's genitals, which made the Plaintiff very uncomfortable. *Id.* at ¶ 13. Also in 2016, Deweese pointed to a female co-worker and told the Plaintiff that he needed to "end up with someone like that," which made the Plaintiff very uncomfortable. *Id*. at ¶ 18. In 2016, Deweese told a female employee, who said that she was going to pass out, that the Plaintiff would give her a kiss to wake her up; this made the Plaintiff very uncomfortable and anxious. *Id*. at ¶ 19. In 2016, Deweese's behavior made the Plaintiff uncomfortable and afraid that he was going to be punished for engaging with Deweese and then lose his job. *Id*. at ¶ 20.

3

On another occasion, while the Plaintiff was waiting for parts to arrive, Deweese told the Plaintiff to get busy. Def. Ex. A, 19:12–20. Another day, while wrapping parts, the Plaintiff looked up at the workers sanding the floor, and Deweese said, "Get busy." *Id.* at 19:21–25.

The Plaintiff believes he complained to the union about Deweese on three occasions and that he filed a grievance against Deweese and Joseph Fellows, another of his supervisors. *Id.* at 11:23–24, 56:22–57:1, 58:3–5. The Plaintiff testified that he complained that Deweese continued to bother him after he filed a grievance, even though the union said they were going to talk to human resources about Deweese. *Id.* at 57:12–58:2.

Specifically, on April 8, 2016, the Plaintiff reported Deweese to Deweese's supervisors for harassing and intimidating him because of his race. Pl. Ex. 1, ¶ 14. After the Plaintiff reported Deweese to the union, Deweese came to the Plaintiff's work area and said, "Travis, come here." Def. Ex. A, 20:2–5. The Plaintiff started walking away, and Deweese said, "Don't you walk away from me;" "Don't you know that's insubordination?" *Id.* at 20:6–8. Then Deweese asked the Plaintiff if he had mopped the floor and said, "You know, don't you know I could write you up for that?" *Id.* at 20:14–17, 105:1–13. Deweese yelled at the Plaintiff and twice said, "I'll tell you what, you better stay busy tomorrow." *Id.* at 20:17–22; Pl. Ex. 1, ¶ 15. The Plaintiff states that this was Deweese retaliating against him for complaining to the union. Def. Ex. A, 104:18–105:13. After the Plaintiff reported Deweese, Deweese began to watch the Plaintiff closely and nit-pick his work. Pl. Ex. 1, ¶ 16.

On July 11, 2016, the Plaintiff filed a grievance against Deweese and Fellows for their intimidating and harassing behavior. *Id.* at ¶ 21; Pl. Ex. 3, ECF No. 63-3.

In his affidavit, the Plaintiff states that, in 2017, Deweese made him do the "pack-out" alone and allowed the Plaintiff's co-worker Brendon to leave work early. Pl. Ex. 1, ¶ 26.

### D. The April 11, 2016 Verbal Warning

On April 11, 2016, the Plaintiff was told verbally by Fellows that he would be written up for lack of effort. Def. Ex. A, 50:18–51:19, 79:13–21, 81:13–17. On April 15, 2016, Supervisor Bob Helton issued a Supervisor's Report for "SOC 5 - Failure to exert normal effort on the job, wasting time, loitering, loafing or sleeping on the job" when the Plaintiff, on April 8, 2016, refused to wrap more than 900 pieces when the quota for the day was 1200 pieces. Pl. Ex. 4. The April 15, 2016 written warning was never issued to the Plaintiff; he only saw a copy of the document in late 2017 or 2018, after this litigation was filed. Def. Ex. A, 80:2–21. The Plaintiff does not know whether his co-worker was written up for the same conduct. *See id.* at 53:1–11.

The Plaintiff testified that this co-worker completed the discrete task of checking the parts while the Plaintiff completed the discrete task of wrapping parts. *Id.* at 49:18–52:25, 76:9–79:2. He also testified that he wrapped parts together with a different co-worker. *Id.* at 77:4–24.

### E. Training on the OP-50 Machine

In 2013 or 2014, the Plaintiff received training as an operator on the OP-50 machine. *Id.* at 66:4–67:5. The Plaintiff struggled to operate the OP-50 after his training. *Id.* at 72:4–8. In 2017, the Plaintiff received additional training on the OP-50 machine and worked on the machine for approximately three months. *Id.* at 72:9–74:14.[1] In 2017, the Plaintiff's co-worker, Heather, who is Caucasian, received training on the OP-50, OP-60, and OP-70 machines. *Id.* at 68:8–69:2, 74:15–25, 116:13–18, 117:2–11. The Plaintiff never requested training on the OP-60 or OP-70. *Id.* at 116:19–23, 119:17–25. The Plaintiff does not know how the Defendant decides

---

[1] In his affidavit offered in support of summary judgment, the Plaintiff asserts that he "was never fully trained" on the OP-50 machine. Pl. Ex. 1, ¶ 24. This is contrary to his deposition testimony, and the Plaintiff offers no explanation for the conflict. Therefore, the Court disregards the statement in the affidavit. *See James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020) ("[T]he sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony.").

who gets trained on which machines. *Id.* at 120:1–3. The Plaintiff does not know who trained Heather or how her training differed from his, except that her training lasted longer. *Id.* at 68:15–72:2.[2] The Plaintiff's co-worker Brendon, who is Caucasian, was trained and began to operate the OP-50, even though he had less seniority than the Plaintiff. Pl. Ex. 1, ¶ 25.

F.      **The Plaintiff's Interactions with Co-Workers**

The Plaintiff testified that his co-workers would intimidate him by staring at him until they got his attention. Def. Ex. A, 37:12–38:23; Pl. Ex. 1, ¶ 10. The Plaintiff does not remember when he filed the grievance about this conduct. Def. Ex. A, 38:24–39:3. The Plaintiff testified that the Defendant investigated these allegations in 2018. *Id*. at 89:11–91:13.[3]

**ANALYSIS**

The Defendant seeks summary judgment in its favor on all claims. As the Plaintiff did not respond in support of his state law claim of intentional infliction of mental and emotional distress, the Court deems the state law claim abandoned and grants summary judgment in favor of the Defendant on Count VI. *See Palmer v. Marion County*, 327 F.3d 588, 597–98 (7th Cir. 2003). The Court now considers the motion as to the Plaintiff's federal claims of race discrimination, hostile work environment, and retaliation.[4]

---

[2] In his affidavit, the Plaintiff asserts that Heather "was provided a substantial amount of guidance." Pl. Ex. 1, ¶ 24. However, the Plaintiff earlier testified that he did not have details regarding Heather's training other than that she trained longer than he did. *See* Def. Ex. A, 68:15–72:8. The Plaintiff offers no factual basis for this conflict. Therefore, the Court disregards the statement in the affidavit. *See James*, 959 F.3d at 316.

[3] The Plaintiff offers a contrary statement in his affidavit that "management did nothing" when he informed them of the co-workers staring at him in an intimidating manner. Pl. Ex. 1, ¶ 10. Because the Plaintiff has offered no explanation for this conflict, the Court disregards this portion of paragraph 10 of his affidavit. *See James*, 959 F.3d at 316.

[4] In the final section of its brief, the Defendant argues that the Plaintiff's claims are untimely based on a 180-day contractual limitations period in the Plaintiff's Application for Employment. *See* Def. Ex. C. Because the Defendants' motion is granted on the merits of the Plaintiff's claims, the Court declines to reach this alternate argument. However, the Court notes that the Defendant asserts the untimeliness of the Title VII claims based on the date the Plaintiff filed his complaint in federal court; this is in direct conflict with the case relied on by the Defendant, which enforced a contractual limitations period based on the

A.     **Race Discrimination—Failure to Train**

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of his race. 42 U.S.C. § 2000e-2(a)(1). Under § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "The legal analysis for discrimination claims under Title VII and § 1981 is largely identical." *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, —, 2022 WL 2093087, at *2 (7th Cir. June 10, 2022) (citing *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 788 (7th Cir. 2019)).

Although the Complaint alleges several bases for the Plaintiff's race discrimination claim, the Plaintiff pursues only the Defendant's alleged failure to train him on the OP-50, OP-60, and OP-70 machines, abandoning the other arguments. In support of this claim, the Plaintiff relies on the familiar *McDonnell Douglas* burden-shifting framework. *See Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021). The prima facie case for a failure to train claim under the *McDonnell Douglas* test requires a plaintiff to show that (1) he belongs to a protected class, (2) the employer provided training to its employees, (3) he was eligible for training, and (4) he "was not provided training under circumstances giving rise to an inference of discrimination, *i.e.*, that [he] was denied training given to other similarly situated employees who were not members of the protected group." *Pafford v. Herman*, 148 F.3d 658, 667 (7th Cir. 1998). Once the plaintiff establishes each element of the prima facie case, the burden shifts to the defendant employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Lewis*, 36

---

earlier date the EEOC charge was filed. *See Lugihibl v. Fifth Third Bank*, No. 13 C 7193, 2015 WL 1235221, at *1–2 (N.D. Ill. Mar. 16, 2015) (noting that numerous courts have declined to enforce contractual periods in Title VII cases as contrary to public policy when the defendant argues that the plaintiff should have filed suit in federal court within the contractual limitations period).

F.4th at —, 2022 WL 2093087, at *3 (citing *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020)). The burden then shifts back to the plaintiff to show why that explanation is a pretext for discrimination. *Id.* (citing *Tyburski*, 964 F.3d at 598).

The Defendant argues that this discrimination claim fails because the Plaintiff was in fact trained on the OP-50 machine, did not seek training on the OP-60 or OP-70 machines, and cannot show that he was treated differently than a similarly situated employee outside of his protected class. First, the Defendant argues that the Plaintiff cannot show that he did not receive any training for which he was eligible. Regarding his eligibility for training on the OP-50 machine, the Plaintiff received training both in 2013 or 2014 and again in 2017; the Plaintiff has not offered any evidence that he was eligible for further or different training on the OP-50 machine. Regarding the OP-60 and OP-70 machines, the Plaintiff testified that he does not know the eligibility requirements for training on those machines, and he testified that he did not seek training on those machines. The Plaintiff has failed to meet his burden of showing that he was eligible for training that he did not receive.

Second, the Defendant argues that the Plaintiff cannot show that similarly situated employees outside the Plaintiff's protected class received training that the Plaintiff was entitled to but did not receive. "To meet his burden of demonstrating that another employee is 'similarly situated,' a plaintiff must demonstrate that there is someone who is directly comparable to him in all material respects." *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 492 (7th Cir. 2014) (quoting *Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002)). Employees with different performance records are not proper comparators. *Ennin v. CNH Indus. Am., LLC*, 878 F.3d 590, 597 (7th Cir. 2017).

The Plaintiff identifies co-worker Heather, who is Caucasian, as a comparator, testifying that she was trained on and operated the OP-50 machine in 2017. However, the Plaintiff testified that he does not know who trained Heather or how her training differed from his, except that her training lasted several weeks longer than his. The Plaintiff also states in his affidavit that his co-worker Brandon received training on and began operating the OP-50 machines despite having less seniority than the Plaintiff, but the Plaintiff offers no further evidence regarding Brandon's training. The Plaintiff again has offered no evidence of the qualifications necessary to obtain training on the OP-50, OP-60, or OP-70 machines or to operate the machines once trained. He also identifies no evidence regarding his employment performance as compared to Heather or Brandon or any other information regarding their respective employment histories. As noted above, the Plaintiff first received training on the OP-50 machine in 2013 or 2014 and then received supplemental training in 2017. Heather first received her training in approximately 2017.

The Plaintiff's unsupported belief that he was treated differently is insufficient, standing alone, to satisfy this prong of the prima facie case. *See Singh v. Town of Mount Pleasant*, 172 F. App'x 675, 682 (7th Cir. 2006) (finding that the plaintiff's conclusory statements were insufficient to support her claim of inadequate training based on impermissible considerations of race, color and national origin); *see also Golla v. Office of the Chief Judge*, 875 F.3d 404, 407 (7th Cir. 2017) (finding that the Plaintiff failed to show that conduct was racially motivated when he "presented no evidence, beyond the fact that he is white and [his co-worker was] African-American, to demonstrate that race contributed to disparity in their pay"); *Hanners v. Trent*, 674 F.3d 683, 694 (7th Cir. 2012) (finding that the plaintiff's "subjective beliefs" about the

implications of the defendant's statements were insufficient to create a genuine issue of material fact).

The Plaintiff cannot make out a prima facie case of race discrimination in relation to his training on the OP-50, OP-60, or OP-70 machines, nor has he offered any evidence that his race played a role in the training he received. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (explaining that, on summary judgment, the court considers the evidence as a whole and asks whether a reasonably jury could infer discrimination). The evidence presented by the Plaintiff "does not even raise suspicion of racial discrimination." *Ennin*, 878 F.3d at 597. Accordingly, the Court grants summary judgment in favor of the Defendant on the Plaintiff's race discrimination claims in Counts I and IV.

**B.     Hostile Work Environment**

Although the Plaintiff's Complaint alleges a hostile work environment based on racially motivated harassment by his supervisors and his co-workers, the Plaintiff's response focuses solely on the conduct of his direct supervisor, Chris Deweese, abandoning his claims based on his co-workers' conduct. To succeed on a hostile work environment claim based on race, a plaintiff must demonstrate that (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was so severe or pervasive as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is a basis for employer liability. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 900 (7th Cir. 2018) (citing *Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017)). Courts analyze § 1981 hostile work environment claims in the same way as Title VII claims. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011).

In support of his claim that Deweese created a hostile work environment based on the Plaintiff's race, the Plaintiff offers his testimony of unwelcome harassment when Deweese yanked his shirt sleeve, slapped his shoulder hard several times in a row, and made at least four sexually charged comments to the Plaintiff. The first comment was when Deweese pushed the Plaintiff, told him to look at a woman, and said "I bet someone is taking care of that." On another occasion, Deweese asked the Plaintiff if he had a girlfriend and told the Plaintiff that he knew the Plaintiff was doing something with his "johnson," referring to the Plaintiff's genitals. On a third occasion, Deweese pointed to a female co-worker and told the Plaintiff that he needed to "end up with something like that." Finally, Deweese told a female worker, who said that she was going to pass out, that the Plaintiff would wake her up with a kiss.

First, the Defendant argues that the claim fails because the Plaintiff cannot demonstrate that Deweese's conduct was racially motivated. "While it is true that harassment need not be *explicitly* racial in order to be probative of a hostile environment, it is equally true that not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." *Beamon v. Marshall & Ilsley Tr. Co.*, 411 F.3d 854, 863 (7th Cir. 2005) (citation omitted). Indeed, the Plaintiff has not identified any inherently racial component of Deweese's conduct. Rather, the Plaintiff attempts to show a racial motivation by stating in his affidavit that Deweese did not slap the shoulders or pull the shirt sleeves of his white co-workers and that Deweese did not engage in sexually charged banter with the Plaintiff's white co-workers. This argument fails because the latter statement is directly contrary to his deposition testimony that Deweese walked behind a white, male co-worker and began "acting like he was humping behind him." Def. Ex. A, 55:16–56:21.

11

Moreover, the Plaintiff provides no factual support for his bald assertions regarding Deweese's conduct with white co-workers. *See King v. Ford Motor Co.*, 872 F.3d 833, 840 (7th Cir. 2017) (finding that the plaintiff's conclusory assertion that she worked the minimum number of hours to qualify for FMLA leave was insufficient to create a triable issue of fact); *Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."); *Cook v. Henderson*, 29 F. App'x 386, 389 (7th Cir. 2002) ("[Plaintiff] relied solely on his affidavit to show that similarly situated individuals outside of his class were treated more favorably. However, he did not present any proof."). Thus, the Plaintiff offers nothing more than his supposition in his affidavit that Deweese's behavior was motivated by race, which is insufficient to defeat summary judgment. *Houlihan v. City of Chicago*, 871 F.3d 540, 554 (7th Cir. 2017) ("[S]peculation cannot defeat summary judgment."); *Yancick*, 653 F.3d at 548 ("If the subjective beliefs of plaintiffs in employment discrimination cases could, by themselves, create genuine issues of material fact, then virtually all defense motions for summary judgment in such cases would be doomed." (citation omitted)); *Golla*, 875 F.3d at 407.

Second, the Defendant argues that the Plaintiff has failed to offer evidence that Deweese's conduct was severe or pervasive. To qualify as a hostile work environment, the discrimination must be "so severe or pervasive so as to affect the terms and conditions of employment." *Johnson*, 892 F.3d at 901 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993)). Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[E]mployers generally do not face liability for off-color comments, isolated incidents, teasing, and other unpleasantries that are, unfortunately, not uncommon in the

workplace." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 881 (7th Cir. 2018) (citation omitted). Courts assessing whether a workplace is objectively hostile "consider the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.'" *Alamo*, 864 F.3d at 549–50 (quoting *Harris*, 510 U.S. at 23).

The Plaintiff's allegations do not rise to this level. The evidence of Deweese pulling on the back of the Plaintiff's shirt sleeve once, slapping him hard on the shoulder three or four times, and making at least four sexually charged comments cannot reasonably be viewed as anything more than occasional juvenile behavior. "[A]lthough a workplace need not be 'hellish' to constitute a hostile work environment, a hostile work environment must be 'so pervaded by discrimination that the terms and conditions of employment [a]re altered." *Id.* at 550 (citations omitted). Even when the facts are viewed as a whole, no reasonable trier of fact could find Deweese's conduct severe or pervasive.

Accordingly, the Court grants summary judgment in favor of the Defendant on the Plaintiff's hostile work environment claims in Counts II and IV.

**C.    Retaliation**

Under Title VII, an employer is prohibited "from retaliating against an employee for opposing or participating in an investigation of an unlawful employment practice. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018) (citing 42 U.S.C. § 2000e-3(a); *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016)). In order to survive summary judgment on this claim, the Plaintiff must offer evidence (1) that he engaged in a statutorily protected activity, (2) that he suffered a materially adverse action taken by the employer, and (3) of a causal connection

between the two. *Id.* (citing *Lord*, 839 F.3d at 563). In his response brief, the Plaintiff identifies his statutorily protected activity as his April 8, 2016 complaint to management that Deweese's conduct was harassing and intimidating based on race. The Defendant argues that the Plaintiff cannot show that he suffered a materially adverse action as a result of this activity.

In the context of a Title VII retaliation claim, "a materially adverse action need not be one that affects the terms and conditions of employment, but it must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Id.* at 867 (internal quotation marks and citations omitted). The anti-retaliation provision "protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 868 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

First, the Plaintiff asserts that Deweese retaliated against him after the April 8, 2016 complaint when Deweese, upon returning from the meeting with management about the Plaintiff's complaint, began to yell at the Plaintiff and tell the Plaintiff that he needed to get back to work and that he better stay busy. *See* Pl. Br. 10, ECF No. 63. Deweese also began to watch the Plaintiff closely and nit-pick his work. To the extent this conduct by Deweese could be considered a threat of future discipline, "the possibility of discipline can be stressful . . . [but is] not enough to support a claim for retaliation." *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). Here, no reasonable jury could find that Deweese's initial reaction following the meeting or the Plaintiff's general statements that Deweese watched him closely and nit-picked his work are sufficient to show that the Plaintiff would be dissuaded from exercising his Title VII rights. *See id.* at 858.

Second, the Plaintiff also argues in his brief that Deweese's pulling on his shirt and slapping his shoulder as examples of retaliatory harassment. However, the Plaintiff testified that Deweese pulled on his shirt in 2015 and lists the slapping as occurring chronologically in 2016 before his report to management. As for the sexually charged comments, the Plaintiff's affidavit lists some of the sexually charged comments as occurring prior to his April 8, 2016 report and some of them as occurring after the report. Deweese's conduct that occurred prior to the Plaintiff's complaint to management cannot form the basis of his retaliation claim.

Next, the Plaintiff asserts that Deweese made him work alone in retaliation for his complaint. Pl. Br. 10. However, the only evidence the Plaintiff offers is the statement in his affidavit that, in 2017, Deweese made him "pack-out" alone and that his co-worker Brandon was allowed to leave work early. This conduct occurred at least eight months after the Plaintiff's complaint to management and, thus, is too attenuated to be causally related. *See Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (finding that a five-month time span, without more, was insufficient to establish a genuine issue of material fact to survive summary judgment); *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012) ("[E]xtended time gaps alone militate against allowing an inference of causation based on suspicious timing."). The Plaintiff also offers no factual details to show how these two incidents were an adverse action. Notably, the Plaintiff testified that Brandon completed a different task with wrapping parts than the Plaintiff performed.

Finally, the Plaintiff asserts that he was written up in retaliation for his April 8, 2016 complaint. Indeed, the Plaintiff has offered evidence of a written discipline by a different supervisor dated April 15, 2016, for the Plaintiff's conduct of refusing to meet a quota on April 8, 2016. Pl. Ex. 4. While the Plaintiff testified that he was told he would be written up, he

15

testified that he did not see the written discipline until sometime in 2017 or 2018 after he had initiated this litigation. In addition, the Plaintiff's testimony shows that he does not know whether his co-worker Brandon was written up for the same conduct, and the Plaintiff has offered no evidence that Brandon was not written up.[5] Lastly, the Plaintiff has not identified any harm that resulted from the written discipline. *See Poullard*, 829 F.3d at 856–57 (finding that a letter of admonishment was not a materially adverse action because the plaintiff did "not explain what effect if any that letter had on his compensation, career prospects, or conditions of employment").

Based on the foregoing, the Plaintiff has not offered evidence of a materially adverse action taken after his April 8, 2016 complaint to management about Deweese. Accordingly, the Court grants summary judgment in favor of the Defendant on the Plaintiff's retaliation claims in Counts III, IV, and V.

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS the Defendant's Motion for Summary Judgment [ECF No. 55]. The Court DIRECTS the Clerk of Court to enter judgment in favor of the Defendant Fiat Chrysler Automotive and against the Plaintiff Travis Story.

SO ORDERED on June 24, 2022.

> s/ Theresa L. Springmann
> JUDGE THERESA L. SPRINGMANN
> UNITED STATES DISTRICT COURT

---

[5] In his affidavit, the Plaintiff makes the conclusory statement that Brandon was not written up for this conduct. Pl. Ex. 1, ¶ 17. However, this statement appears to be contradictory to the Plaintiff's deposition testimony suggesting that he does not know whether Brandon was written up. Therefore, the Court disregards this assertion in paragraph 17 of the affidavit. *See James*, 959 F.3d at 316. Moreover, the statement in the affidavit is conclusory and, thus, insufficient to survive summary judgment. *See King*, 872 F.3d at 840.